IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Criminal Action No. |
| | ) | 03-00171-01-CR-W-ODS |
| HESSAM GHANE, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

On December 21, 2007, Defendant was ordered to be hospitalized at the Federal Medical Center in Butner, North Carolina, for treatment to determine whether there was a substantial possibility in the foreseeable future that Defendant would attain the capacity to permit this case to go forward. Defendant has returned from the Federal Medical Center, and the Court has received reports from both Dr. Robert G. Lucking, the examining psychiatrist at the Federal Medical Center, and Dr. William S. Logan, a defense expert who reviewed Dr. Lucking's report and evaluated Defendant.

### *I. BACKGROUND*

On July 18, 2006, the government moved for a judicial determination of mental competency (Doc. No. 217). In support of its motion, the government referenced the following excerpt from Dr. Lucking's, April 12, 2006, report:

> The primary evaluator continues to have concerns regarding the foundation and fundamental structure of Mr. Ghane's current competency. Mr. Ghane is currently not expressing any beliefs or ideas which would lead one to believe that he is not competent. The primary evaluator again offers the observation that the Court and attorneys will need to be vigilant over the course of the legal proceedings for the re-emergence of his previous delusional beliefs. If the stress of the legal proceedings results in the re-emergence of his delusional beliefs, he will need to be returned for

further evaluation.

The motion stated that Dr. Lucking's charge, coupled with Defendant's July of 2006 *pro se* pleadings and information from the medical staff at Corrections Corporation of America ("CCA") that Defendant was not taking his anti-psychotic medication as prescribed, led the government to believe Defendant might be suffering from a mental disease or defect that rendered him mentally incompetent to assist in his own defense. In response to the government's motion, I ordered that Defendant undergo a local psychological evaluation to be conducted by Dr. John H. Wisner (Doc. No. 219).

Dr. Wisner submitted a report, dated July 27, 2006, in which he found Defendant incompetent to stand trial and aid in his own defense. I held a three-part competency hearing on August 2, 2006; August 10, 2006; and August 30, 2006 (See Doc. Nos. 228, 240, 246). On September 25, 2006, I entered a Report and Recommendation recommending that the Court find Defendant was not competent to stand trial (Doc. No. 260). The Court adopted the Report and Recommendation on October 31, 2006 (Doc. No. 270). Defendant appealed the competency issue to the Eighth Circuit Court of Appeals on November 13, 2006 (Doc. No. 272). On June 27, 2007, the Eighth Circuit affirmed the opinion of this Court and held that Defendant was "mentally incompetent to stand trial at the time of the August 2006 hearing." United States v. Ghane, 490 F.3d 1036, 1041 (8th Cir. 2007).

On December 21, 2007, Defendant was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d)(1) for hospitalization and treatment for a reasonable period of time, not to exceed four months, to determine whether there was a substantial possibility in the foreseeable future that Defendant would attain the capacity to permit the proceedings to go forward (Doc. No.

292). I received a report from Dr. Lucking dated May 23, 2008, in which he opined that further treatment was not likely to restore Defendant to competency in the foreseeable future. A competency hearing was scheduled for June 13, 2008. At the hearing, Defendant requested additional time to have an expert examine Dr. Lucking's May 23, 2008, report (See Doc. No. 297). As a result, the competency hearing was continued.

The competency hearing was ultimately held on September 11, 2008. Defendant was present, represented by Jim Wyrsch. The government was represented by Assistant United States Attorney Mike Green. Defendant called Dr. William Logan, Robin Jackson, Randy Green, and Dr. John Gonzales to testify. The government called Dr. Robert Lucking. The following exhibits were marked and admitted into evidence:

>   Government's Exhibit 1:   Dr. Lucking's 05/23/08 Forensic Report
>
>   Defendant's Exhibit 18:   Dr. Logan's 09/08/08 Report
>   Defendant's Exhibit 19:   Dr. Logan's Curriculum Vitae

## II. EVIDENCE

On the basis of the evidence presented at the competency hearing, I submit the following findings of fact:

   1.   Dr. Lucking has evaluated Defendant's competency to stand trial four separate times. He estimated he had spent approximately twenty hours in face-to-face interviews with Defendant (Tr. at 37-38). Defendant did not present any active delusional beliefs during these interviews (Tr. at 38).

   2.   When Defendant was at the Federal Medical Center in Butner, North Carolina in 2006, he told Dr. Lucking he did not want to represent himself, and that he wanted the representation of an attorney during the trial (Tr. at 44-45). He also expressed frustration with the fact that he had

3

Case 4:03-cr-00171-KHV   Document 310   Filed 10/09/08   Page 3 of 17

been detained for a lengthy period of time without a trial (Tr. at 46). Defendant was able to accurately recall and report previous psychiatric treatments, facts about himself, and facts about his family (Tr. at 47).

3. In July of 2006, Defendant filed a number of *pro se* motions with the Court, in which he demanded certain witnesses be called and stated he wanted certain things done on his behalf (Tr. at 16, 34). At that time, his case was set for trial in late July of 2006 (Tr. at 15, 34).

4. Dr. Lucking testified Defendant is a very bright individual who understands what needs to be said and done in order to convince an examiner he is competent (Tr. at 35, 36, 37). Had Dr. Lucking been aware of Defendant's *pro se* filings in July of 2006, his opinion in April of 2006 that Defendant was competent to stand trial would have been significantly different (Tr. at 35). Dr. Lucking believed Defendant's *pro se* filings in July of 2006 support the conclusion that Defendant is incompetent (Tr. at 49).

5. Dr. Lucking's most recent report is dated May 23, 2008, and was signed on June 6, 2008 (Gov. Exh. 1; Tr. at 32). In his report, Dr. Lucking stated, <u>inter</u> <u>alia</u>:

> Mr. Ghane is a highly educated, intelligent individual who has undergone multiple forensic evaluations. As a result of the multiple evaluations he has been educated regarding the process, purpose and intent of these evaluations. He is also aware of the meaning of the information and how the information is used. Mr. Ghane has also reviewed each of these forensic reports in detail. He has been able to see the information used by the primary evaluator and the manner in which it is used to reach and draw the inferences, conclusions and opinions in the report. During this reporting period, Mr. Ghane has been guarded, evasive, and circumspect in his response to questions posed by the primary evaluator. He has consciously and intentionally avoided providing information to the primary evaluator which he perceives could be interpreted as paranoid or delusional.
> . . .
> It is the opinion of the primary evaluator, based on the documents reviewed, Mr. Ghane has likely never been competent, but managed to conceal his underlying delusional beliefs from the primary evaluator during the evaluation periods. Mr.

> Ghane possesses an adequate and factual understanding of the charges against him. He has an adequate understanding of the pleas available to him and the consequences of each. It does not appear that Mr. Ghane understands the seriousness of his legal difficulty at this time. He understands the roles of and functions of the courtroom personnel. He exhibits a reasonable understanding of the adversarial nature of the courtroom proceedings. Mr. Ghane is currently not expressing any idiosyncratic or delusional beliefs about his attorney, however the collateral documents indicate he is incorporating them into the delusional system and believes he needs to act on his own to defend himself. However, he continues to write about his delusional beliefs and to act upon them although he does not express them to the primary evaluator. There are currently major psychiatric symptoms which prevent him from working with his attorney to plan a legal strategy. Mr. Ghane understands the procedure for challenging witnesses. At this time, Mr. Ghane appears to have the ability to engage in a forthright and candid relationship with his attorney as demonstrated by his interactions with the primary evaluator. At this time, it appears Mr. Ghane has the capacity to follow the proceedings in the courtroom and to assist his attorney during the trial. As the result of active delusional beliefs his perception, interpretations of events, judgment and decisional capacity is impaired. His decisions regarding his legal case are made based upon these delusional beliefs. As a result, he is not capable of rationally waiving his right to trial and other constitutional protections. It is also the opinion of the primary evaluator that Mr. Ghane does not have the capacity to testify adequately and relevantly in his own behalf if he insists on doing so, as it will most likely be based on the active delusional beliefs.

(Gvt. Exh. 1, at 4, 16-17). Concerning Defendant's relationship with his attorney, Dr. Lucking explained:

> Mr. Ghane is currently demonstrating his inability to work with his attorneys. He fails to listen to and take their advice, frequently making his own decision and establishing his own legal strategy. Mr. Ghane accuses his attorneys of ineffective assistance of counsel if they fail to act as he demands. He also accuses them of acting against him, violating attorney client privilege and violation of confidentiality. Additionally, he has made several complaints that his attorneys have forced/coerced him to concede to their demands. Mr. Ghane has undermined the work and legal strategies of his attorneys by filing motions which criticize his attorneys, request the court to compel them to act as he demands, and asks for decisions counter to the strategies and plans of his attorneys.

(Gvt. Exh. 1, at 19).

6. Dr. Lucking concluded that Defendant (a) is not competent to stand trial on the basis

5

that he is unable to properly assist in his defense, and (b) cannot be restored to competency in the foreseeable future (Gvt. Exh. 1, at 16-17; Tr. at 32-33).

  7. Dr. Lucking also noted in his report that while at Butner, North Carolina, Defendant was suspected of selling his medication as sleeping pills (Gvt. Exh. 1, at 15). A subsequent search of Defendant's room revealed multiple pills (Paroxetine[1] and Simvastatin[2]) (Gvt. Exh. 1, at 15). Defendant told officials he was no longer depressed and did not need to continue the Paroxetine (Gvt. Exh. 1, at 15). The Paroxetine was subsequently discontinued (Gvt. Exh. 1, at 15).

  8. Dr. Lucking has not personally seen Defendant since May or early June of 2008 (Tr. at 40).

  9. On August 14, 2008, Defendant filed a *pro se* motion in which he sought to advance a United States Supreme Court case, Zedner v. United States, to the Court's attention to prove his competency (Doc. No. 303). This was done without his attorney's knowledge (Tr. at 19).

  10. Dr. Lucking testified he believed Defendant's August 14, 2008, *pro se* motion supported his conclusion that Defendant superficially presents himself as competent (i.e., that he understands court procedure and court personnel quite well), but is unable to work with his attorneys (Tr. at 33). Dr. Lucking explained that the August 14, 2008, motion indicates Defendant continues to distrust his attorneys, not rely upon their consult and decision-making ability, and represents his belief that he needs to do things on his own (Tr. at 33-34). Dr. Lucking believed the *pro se* motion was a reflection of Defendant's continued paranoia and belief that his attorneys were participating

---

[1] Paroxetine, or Paxil, is an antidepressant. Yahoo!Health, Drug Guide, *at* http://health.yahoo.com/other-other/paroxetine/healthwise--d03157a1.html (last visited Oct. 8, 2008).

[2] Simvastatin, or Zocar, is used to treat high cholesterol. Yahoo!Health, Drug Guide, *at* http://health.yahoo.com/other-other/simvastatin/healthwise--d00746a1.html (last visited Oct. 8, 2008).

6

in the conspiracy against him (Tr. at 34). Dr. Lucking stated it also indicated Defendant still had an active delusional process (Tr. at 36).

11. Accroding to Dr. Lucking, Defendant's behavior in filing the August 14, 2008, *pro se* motion is consistent with his behavior in July of 2006 (Tr. at 34).

12. Dr. Lucking reviewed Dr. Logan's September 8, 2008, report (Tr. at 36). Dr. Lucking believed Dr. Logan's report reflected the position he held in 2006, in that Defendant was able to superficially present himself as competent (Tr. at 36). Dr. Logan's notation on page fourteen of his report that, "Unfortunately, [Defendant]'s defense attorneys were not aware of his recently filed motion," indicated that Defendant (a) continued to have the same delusional system that operated underneath what his attorneys were doing, and (b) would not be able to again assist his attorneys at trial (Tr. at 37). Dr. Lucking opined the core issues of Defendant's delusional beliefs would again arise at the time of trial (Tr. at 37).

13. Dr. Lucking testified complaints about an attorney do not necessarily make a criminal defendant incompetent to stand trial (Tr. at 41-42, 48).

14. Dr. Lucking testified Defendant received some benefits from the use of Seroquel (Tr. at 43). His May 23, 2008 report stated, however, "It is the present opinion, after reviewing the collateral data, that the re-emergence of the core organizing principles of his delusional system, as described in prior evaluations was not regression due to the stress of the trial, but was the result of their consistent and continuous presence and failure to respond to the current treatment." (Gvt. Exh. 1, at 18).

15. William S. Logan, M.D., is a forensic and general psychiatrist (Def. Exh. 19; Tr. at 4). He was retained by defense counsel to interview Defendant and review certain records to give

7

an opinion on Defendant's competency to stand trial (Tr. at 5; See Def. Exh. 18, at 2-3). Specifically, Dr. Logan reviewed the evaluations and testimony of other doctors who have examined Defendant including Dr. Delany Dean, Dr. John Wisner, and Dr. Robert Lucking (Tr. at 5; See Def. Exh. 18, at 2-3). Dr. Logan also reviewed Defendant's writings, *pro se* motions to the Court, medical records from his two hospitalizations at Overland Park Regional Medical Center in August of 2002 and February of 2003, and medical records while at CCA from May of 2003 through August of 2008 (Tr. at 5-6, 15-17; See Def. Exh. 18, at 2-3).

16.     Dr. Logan examined Defendant for one hour and forty-five minutes on August 20, 2008 (Tr. at 5). Defense counsel was present during the examination so that Dr. Logan could get an appreciation of Defendant's interaction with his attorney (Tr. at 5, 10). At the time of the examination, Defendant had resumed taking Papoxetine (Def. Exh. 18, at 10).

17.     Dr. Logan prepared a report concerning his examination of Defendant dated September 8, 2008, in which he opined Defendant was currently competent to stand trial (Def. Exh. 18; Tr. at 6-7). He stated:

> Dr. Ghane is most anxious to be found competent. He seemed comfortable with Mr. Wyrsch as his attorney and attended to Mr. Wyrsch's comments. He denied viewing Mr. Wyrsch, the judge, prosecution or the potential jury as part of any conspiracy against him. He viewed the repeated delays to assess his competency as unnecessary.
> . . .
> There never has been a question that Dr. Ghane can understand the nature and consequences of the proceedings against him. Dr. Ghane may still believe he was persecuted by the government. Currently, however, his focus on these delusional ideas appear to have lessened to the point Dr. Ghane can focus on practically facing the legal situation and can assist properly in his defense.
>
> There is caution that Dr. Ghane could again deteriorate prior to or during the stress of a trial. Presently, he does appear to have the ability to listen to and evaluate his attorney's advice and to come to voluntary, knowledgeable and informed legal decisions in his perceived own best interest.

. . .

>It is the opinion of this examiner that at the present time Dr. Ghane's Delusional Disorder and Depression appear to be under sufficient control on medication [and] that he is capable of understanding the nature and consequences of the proceedings against him and assisting properly in his defense.
>
>If Dr. Ghane's mental condition deteriorates, however, as trial approaches, it is unlikely that further treatment would be able to restore his competency to stand trial in the reasonably foreseeable future.

(Def. Exh. 19, at 12, 15).

18. Dr. Logan based a large percentage of his opinion on his personal examination of Defendant (Tr. at 10, 11). Dr. Logan's opinion that Defendant was competent to stand trial had two qualifications (Tr. at 7-8). First, Defendant would need to stay on his medication in order to remain competent (Tr. at 7). Second, there should not be a significant delay between a finding of competency and Defendant's trial (Tr. at 7-8, 25-28).

19. Dr. Logan testified if Defendant's case proceeded in a fairly regular manner, he believed there was better than a fifty percent chance that Defendant could withstand the stress and proceed to trial (Tr. at 27). He further stated there would need to be "a lot of attention, care and feeding paid to [Defendant] in terms of his contact with his attorney, and if delays are explained to him and it appears that people are being reasonably accommodating and forthright with him," then Defendant is "more likely than not" to proceed in a competent manner (Tr. at 28).

20. Dr. Logan testified Defendant historically has always had symptoms that fall into two major categories: depression, sometimes with anxiety, and paranoid thinking (Tr. at 8). Defendant has done relatively better mentally on an antidepressant (Tr. at 8). Dr. Logan testified Defendant was currently doing well enough that he was not drawing causal connections between events that happened to him in the past and his current situation (Tr. at 8). He further testified Defendant was

9

open to discussing legal strategy and in cooperating with his attorneys (Tr. at 8). At the present time, Defendant did not see his attorneys as part of a conspiracy against him (Tr. at 8).

21. Dr. Logan opined Seroquel was an appropriate medication for Defendant at the current time in terms of decreasing his suspiciousness (Tr. at 8-9). The Seroquel does, however, have adverse effects on Defendant's diabetes and coronary artery disease (Tr. at 9). Dr. Logan stated Defendant was anxious that the charges against him be resolved in some manner (Tr. at 9). Dr. Logan opined that, although Seroquel was effective "for the time being," other medications with a less adverse effect on his blood sugar levels might be tried once Defendant's proceedings have concluded (Tr. at 9-10, 24).

22. Dr. Logan testified Defendant does not tolerate anxiety or delays well (Tr. at 25). He opined the Seroquel may not continue to hold Defendant at a competent state unless Defendant's case proceeds to trial in a relatively quick and orderly manner (Tr. at 25). Delays, especially unannounced delays or changes he does not anticipate, increases Defendant's anxiety and paranoid thinking (Tr. at 25).

23. When questioned about Dr. Lucking's May 23, 2008, report, Dr. Logan stated he agreed with Dr. Lucking's statement that Defendant had become educated regarding the process, purpose and intent of forensic evaluations and was aware of the meaning of the information as well as how the information was used (Tr. at 13). Dr. Logan also agreed with Dr. Lucking's conclusion that Defendant has a goal of being found competent to stand trial (Tr. at 13-14).

24. When asked about Dr. Lucking's statement in his May 23, 2008, report that Defendant was "attempting to conceal his underlying delusional beliefs" in pursuit of his goal of being found competent, Dr. Logan testified he partially agreed (Tr. at 14). Dr. Logan explained that

10

if Dr. Lucking was referring to Defendant's belief that he had been discriminated against and plotted against in the past by the CIA and FBI, Dr. Logan did not agree (Tr. at 14). However, if Dr. Lucking was referring to Defendant concealing his belief that his current attorneys and the court were part of the ongoing plot and conspiracy, Dr. Logan respected Dr. Lucking's opinion (Tr. at 14). Although Dr. Logan agreed that at the time of Dr. Lucking's report, the conclusion that Defendant's pool of persons who were part of the conspiracy against him was continuing to expand was true, Dr. Logan did not believe that to currently be the case (Tr. at 21).

25. Dr. Logan testified he did not necessarily believe Defendant's August 14, 2008, *pro se* motion corroborated Dr. Lucking's conclusion that Defendant would not listen to his attorneys and undercut their legal strategy (Tr. at 17-18). Whether Defendant was undercutting his attorney's performance and legal strategy depended on the content of the motion (Tr. at 19).

26. Dr. Logan opined Defendant's behavior in August of 2008 was similar to that in July of 2006, but much less in degree and content (Tr. at 19). He did not detect Defendant distrusted his attorneys, Dr. McCandless, or a wider conspiracy in the August 14, 2008, *pro se* motion (Tr. at 22). Dr. Logan noted the only similarity between the Defendant's August 14, 2008, motion and is *pro se* motions in July of 2006 was that Defendant's attorney was not aware they were being filed (Tr. at 20; Def. Exh. 18, at 13).

27. In November of 2007, Defendant independently contacted Dr. Logan to perform a competency evaluation, without his attorney's knowledge (Def. Exh. 18, at 10). With regard to this incident, Dr. Logan testified Defendant was prone to act on his own even though he knows he has legal counsel when he gets anxious and somewhat depressed (Tr. at 20). Dr. Logan stated he extracted an agreement with Defendant that Defendant would give his attorneys a window of

11

opportunity to work on his behalf without intervening by filing *pro se* motions (Tr. at 28-29; Def. Exh. 18, at 13).

28. During the competency hearing, Defendant interrupted his attorney at least two times and attempted to direct his method of examination (Tr. at 23, 63). Defense counsel instructed Defendant to "just calm down" (Tr. at 23, 24).

Defendant insisted that defense counsel offer an explanation regarding his *pro se* contact with Dr. Logan in November of 2007 (Tr. at 23). As a result, defense counsel made a proffer that, were Defendant to testify, he would state he had a conversation with his attorneys about contacting Dr. Logan (Tr. at 23). Defense counsel did not do so right away, so Defendant initiated the conversation on his own (Tr. at 23).

29. Robin Jackson is a clinical social worker at the Federal Medical Center in Butner, North Carolina who runs the competency restoration program (Tr. at 52-53). As part of this program, inmates are given information that prepares them to go to court and helps them learn more about the court system (Tr. at 53). Defendant satisfactorily completed the competency restoration program when hospitalized in Butner, North Carolina in April of 2005 (Tr. at 54-55). He did not participate during subsequent hospitalizations because Dr. Lucking determined he had a factual understanding of the material (Tr. at 55).

### *III. LEGAL ANALYSIS*

"The test for determining competence to stand trial is whether the defendant has 'a sufficient present ability to consult with his . . . lawyer with a reasonable degree of rational understanding and whether [the defendant] has a rational as well as factual understanding of the proceedings against him.'" Vogt v. United States, 88 F.3d 587, 591 (8th Cir. 1996)(quoting Dusky v. United States, 362

12

Case 4:03-cr-00171-KHV   Document 310   Filed 10/09/08   Page 12 of 17

U.S. 402, 402 (1960)). In making this determination, courts should consider "any evidence of [the defendant's] irrational behavior, [the defendant's] demeanor before the trial court, [and] available medical evaluations." Id. Based on the evidence adduced at the competency hearing, I recommend the Court find Defendant does not possess the ability to assist his lawyer, but that he does have a rational and factual understanding of the proceedings against him.

### *Ability to Assist Lawyers*

The first prong of the two-prong test for determining competence to stand trial requires a defendant to have "'a sufficient present ability to consult with his . . . lawyer with a reasonable degree of rational understanding.'" Id. Defendant continues to lack this ability.

Dr. Lucking and Dr. Logan offered differing opinions on whether Defendant is currently able to assist in his own defense. Dr. Lucking opined Defendant does not possess the ability to consult with his lawyer with a reasonable degree of rational understanding, whereas Dr. Logan opined that Defendant does have such ability. Careful review of the doctors' respective opinions, coupled with the evidence of record and my personal observations of Defendant during the competency hearing demonstrates Defendant is currently unable to assist in his defense.

Dr. Lucking has evaluated Defendant's competency to stand trial on four different occasions and has spent approximately twenty hours with Defendant. Throughout this period of time, he was unable to detect any active delusional beliefs. Defendant was able to his conceal delusional beliefs about his attorneys and even affirmatively stated he wanted the representation of an attorney, while simultaneously filing *pro se* motions without his attorney's knowledge in an apparent attempt to advance his case on his own. Defendant is a very bright individual and has a goal of being found competent. His familiarity with the process of forensic evaluations and the way in which

13

information obtained from the evaluations are used allowed him to tailor his responses during the evaluations to convince Dr. Lucking he was competent. With regard to Defendant's most recent evaluation, Dr. Lucking stated Defendant was "guarded, evasive, and circumspect in his responses to questions"; he also "consciously and intentionally avoided providing information . . . which he perceive[d] could be interpreted as paranoid or delusional." Dr. Lucking thus opined that Defendant "has never been competent, but managed to conceal his underlying delusional beliefs . . . during the evaluation process."

In contrast to Dr. Lucking, Dr. Logan has examined Defendant on one occasion for a total of approximately one hour and forty-five minutes. Although Dr. Logan disagreed with Dr. Lucking's ultimate conclusion that Defendant was unable to assist in his own defense,[3] Dr. Logan did agree with Dr. Lucking's opinion that Defendant had become educated regarding the process, purpose and intent of forensic evaluations and was aware of the meaning of the information and how the information was used; he also agreed that Defendant had a goal of being found competent. Given these agreed-upon facts, coupled with Dr. Lucking's longitudinal relationship with Defendant and the fact that Defendant successfully concealed his delusional beliefs form Dr. Lucking until the instant evaluation, I attribute more weight to the opinion of Dr. Lucking.

Moreover, even though Dr. Logan opined Defendant is currently able to assist in his defense, his opinion is not absolute. Dr. Logan testified Defendant's continued competency to stand trial depended on Defendant staying on his medication and a timely progression toward trial. Here, it is somewhat uncertain that Defendant will continue taking his prescribed medications. The record

---

[3]Notably, Dr. Logan did not believe Defendant's delusional beliefs were no longer present, he just believed the delusions had lessened.

14

indicates that while Defendant was in Butner, North Carolina for his most recent evaluation he independently quit taking his antidepressant because he no longer thought he was depressed. Additionally, Dr. Logan testified he was uncertain whether the Seroquel would continue to keep Defendant competent, in light of the fact that Seroquel did not work as well when Defendant was anxious.

More uncertain is the amount of time in which Defendant's case could be tried after a finding of competency. Unanticipated delays are, unfortunately, inherent in the court system. Knowing that these types of delays may occur, Dr. Logan testified he believed there was better than a fifty percent chance Defendant could withstand the stress and proceed to trial. However, Dr. Logan also acknowledged that Defendant does not tolerate anxiety well and was prone to act on his own when anxious. Even if unexpected delays could be avoided, there is no guarantee that Defendant would remain competent and continue to be able to assist in his defense. When Defendant filed the *pro se* motions in July of 2006, his case was set for trial at the end of that month. Defendant's own behavior in filing the motions resulted in his case being delayed, in that it caused the government to move for a determination of competency.

Defendant's inability to assist his lawyers in his defense is not isolated to the *pro se* motions and writings in July of 2006. Rather, the record demonstrates that Defendant has a pattern of acting on his own without the knowledge of his attorney. In November of 2007, Defendant independently contacted Dr. Logan to perform a competency evaluation. He had asked his attorney to contact Dr. Logan but, because his attorney act right away, Defendant did so himself. Again in August of 2008, Defendant acted on his own with regard to the instant competency determination even though his attorney was working on his behalf. Specifically, on June 13, 2008, Defendant's attorney asked for

15

a continuance of the competency hearing so he could obtain the services of an expert to review Dr. Lucking's report. Between that time and the September 11, 2008 competency hearing, Defendant filed a notice with the Court of a case that he thought helped prove his competency to stand trial. Dr. Lucking opined Defendant's August 14, 2008 filing indicated Defendant still had active delusional beliefs that operated underneath what his attorneys were doing. My own observations of Defendant during the competency hearing also suggest Defendant is not able to allow his attorney to act on his behalf without interference. Accordingly, I recommend the Court find Defendant is not competent to stand trial.

### *Understanding of the Proceedings*

The second prong of the test for determining competency requires a defendant to have both a rational and a factual understanding of the proceedings. Id. In this case, the record indicates Defendant satisfies this test. Both Dr. Lucking and Dr. Wisner agreed that Defendant understands the proceedings against him. Additionally, Defendant successfully completed the competency restoration program when hospitalized at Butner, North Carolina in April of 2005, and was not required to participate in the program during subsequent hospitalizations due to his factual understanding of the material. I, therefore, recommend the Court find Defendant satisfies this prong of the competency determination.

### *Restoration of Competncy*

Upon a finding that Defendant is incompetent, the Court must next determine whether there is a substantial probability in the foreseeable future that Defendant would attain the capacity to permit the proceedings to go forward. Dr. Lucking opined that Defendant cannot be restored to competency in the foreseeable future. Although Dr. Logan opined Defendant was currently

16

competent to stand trial, he also stated that if Defendant's mental condition deteriorated, it was unlikely that further treatment would be able to restore him to competency. Consistent with the analysis above, I give more weight to Dr. Lucking's opinion and recommend the Court find there is not a substantial probability that Defendant can be restored to competency in the foreseeable future.

## IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order finding that Defendant is not competent to stand trial and there is not a substantial probability that, in the foreseeable future, Defendant will attain the capacity to permit the proceedings to go forward. It is further

RECOMMENDED that if, upon review, the Court finds Defendant remains incompetent and that there is not a substantial probability that his competency will be restored in the foreseeable future, Defendant should be returned to a Federal Medical Center for future evaluation. Pursuant to 18 U.S.C. §§ 4246, 4247(b), Defendant should be evaluated for a reasonable time, not exceeding forty-five days, to determine whether he is "presently suffering from a mental disease or defect as a result of which his release would created a substantial risk of bodily injury to another person or serious damage to property of another."

/s/ *Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
October 9, 2008