IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 03-171-KHV |
| HESSAM S. GHANE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's Motion For Judgment Of Acquittal, Arrest Of Judgment, Or, In The Alternative, New Trial (Doc. #392) filed December 9, 2010. Defendant asserts six bases for his motion: (1) the Court erred in overruling defendant's Amended Motion To Suppress Evidence (Doc. #88) filed August 12, 2005; (2) the Court erred in overruling defendant's Motion In Limine To Exclude Statements On The Basis Of Psychotherapist-Patient Privilege (Doc. #89) filed August 12, 2005; (3) the Court erred in overruling defendant's Motion To Dismiss Indictment Because 18 U.S.C. §§ 229 And 229A Are Unconstitutionally Vague And Overbroad (Doc. #83) filed August 12, 2005; (4) the Court erred in overruling Defendant's Motion In Limine, With Incorporated Suggestions In Support, To Preclude Argument That Suicide Is Not Within The "Peaceful Purpose" Exception To 18 U.S.C. § 229(a)(1) (Doc. #336) filed August 9, 2010; (5) the indictment does not charge an offense; and (6) the Court erred in giving Instruction No. 13 because it constructively amended the indictment. For the reasons stated below, the Court overrules defendant's motion.

## Legal Standards

Defendant moves for a judgment of acquittal, a new trial, or alternatively, for arrest of

judgment pursuant to Rules 29, 33 and 34, Fed. R. Crim. P., respectively. Rule 29 provides that the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). Rule 33 provides that the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 34 provides that the Court "must arrest judgment if . . . the indictment or information does not charge an offense." Fed. R. Crim. P. 34(a)(1).

## Factual And Procedural Background

On May 15, 2003, a grand jury returned a one-count indictment which charged Hessam Ghane with possession of a chemical weapon – potassium cyanide – not intending to use it for a peaceful purpose, in violation of 18 U.S.C. §§ 229(a)(1) and 229A(a)(1). Beginning September 20, 2010, the Court tried the case to a jury. On September 24, 2010, the jury declared that it could not reach a verdict and the Court declared a mistrial. Beginning November 29, 2010, the Court retried the case to a jury. On December 1, 2010, the jury found defendant guilty. The following is a brief summary of the evidence presented at the second trial.

On February 4, 2003, defendant called a suicide hotline and asked for help because he was having thoughts of suicide. Hotline personnel contacted the Police Department of Independence, Missouri, which sent officers to defendant's apartment. At defendant's request, officers drove him to a hospital in Overland Park, Kansas. At the hospital, defendant told Gleb Gluhovsky, a physician's assistant, that he was having suicidal thoughts and that if he decided to kill himself, he would use cyanide. Defendant said that he had cyanide in his apartment and that he had acquired it during his work as a chemist. Gluhovsky asked defendant if he would give up the cyanide. Defendant replied that he would not because he "might want to use it later." Gluhovsky was alarmed and obtained

-2-

permission from hospital authorities to contact the Police Department of Independence, Missouri. A detective went to the hospital and met with defendant, who by then had been admitted to the psychiatric unit.

At the hospital, defendant gave written consent for the police to search his apartment. On February 5, 2003, Dr. Howard Houghton, a treating psychiatrist, interviewed defendant at the hospital. Defendant expressed anger toward unnamed government officials and stated, "you know I have access to chemicals." That same day, police officers searched defendant's apartment – where they found a bottle of powder under the kitchen sink. Fred Larsen, a forensic chemist, analyzed the powder and determined that it was 177 grams of 75 per cent pure potassium cyanide. Dr. LeBeau testified that this amount of cyanide could kill hundreds of people, particularly if transformed into a gas.

Defendant testified that he never intended to use the cyanide to harm anyone. He asserted that he suffered from severe depression, and that he wanted to have the cyanide in case he ever decided to commit suicide. He also stated, however, that he believed that suicide was wrong and that he would never kill himself.

## **Analysis**

**I.     Defendant's Amended Motion To Suppress The 177 Grams Of Potassium Cyanide**

Defendant argues that the Court erred in overruling his <u>Amended Motion To Suppress Evidence</u> (Doc. #88) which asked the Court to suppress the 177 grams of potassium cyanide seized from his residence. Defendant's motion reasserts previously rejected arguments that the search was premised on defendant's involuntary consent and therefore violated his Fourth Amendment right to be free from unreasonable searches and seizures. On October 28, 2005, Magistrate Judge Robert

Larsen held an evidentiary hearing on defendant's motion and on December 14, 2005 recommended that the Court overrule it. See Report And Recommendation To Deny Defendant's Motion To Suppress (Doc. #129). Judge Larsen concluded that based on the totality of the circumstances – defendant's personal characteristics, his environment and his non-threatening interaction with detectives – defendant had voluntarily consented to the search. Judge Larsen further concluded that it was reasonable for the detectives to believe that defendant had voluntarily consented.

On December 28, 2005, defendant filed Defendant Hessam S. Ghane's Objections To The Magistrate Judge's Report And Recommendation To Deny Defendant's Motion To Suppress (Doc. #138). Specifically, defendant objected to Judge Larsen's findings that he voluntarily consented to the search and that the detectives reasonably believed that he had done so. On February 1, 2006, District Judge Ortrie Smith overruled defendant's objections to Judge Larsen's recommendation, adopted Judge Larsen's recommendation and overruled defendant's motion to suppress. See Order Overruling Defendant's Objections To The Magistrate Judge's Reports And Recommendations And Denying Defendant's Motions To Suppress (Doc. #159).

After thoroughly reviewing the record, the Court agrees with, and hereby incorporates by reference, Judge Larsen's report and recommendation. See Doc. #129. The Court therefore did not err in overruling defendant's amended motion to suppress the 177 grams of Potassium Cyanide seized from defendant's residence.

## II. Defendant's Motion In Limine To Exclude Statements Based On Psychotherapist-Patient Privilege

Defendant argues that the Court erred in overruling defendant's Motion In Limine To Exclude Statements On The Basis Of Psychotherapist-Patient Privilege (Doc. #89). Defendant asked the Court to exclude from trial any statements he made to (1) Overland Park Regional Medical Center's

Emergency Room Physician's Assistant Gleb Gluhovsky during an intake interview and (2) Dr. Howard Houghton, his treating psychiatrist, after being admitted to the Mental Health Unit. He asserted that such statements are protected under the federal common law psychotherapist-patient privilege.[1] Both Gluhovsky and Dr. Houghton testified at trial regarding statements defendant made to them.

On October 28, 2005 Magistrate Judge Robert Larsen held an evidentiary hearing on defendant's motion and on December 21, 2005 he recommended that the Court overrule it. See Report And Recommendation To Deny Defendant's Motion In Limine (Doc. #135). Judge Larsen concluded that the privilege did not apply to defendant's statements to Gluhovsky because Gluhovsky is not a licensed psychotherapist, did not provide any form of psychotherapy or counseling services and did not participate in diagnosing or treating defendant under Dr. Houghton's supervision. Judge Larsen concluded that the privilege did not protect defendant's statements to Dr. Houghton for two independent reasons: (1) defendant's statements fall within the "dangerous patient" exception to the privilege and (2) defendant waived the privilege by signing the release of medical information consent form.

On January 6, 2006, defendant filed Defendant Hessam S. Ghane's Objections To The Magistrate Judge's Report And Recommendation To Deny Defendant's Motion In Limine (Doc. #151). Defendant argued that Judge Larsen's conclusion regarding defendant's statements to Gluhovsky were based on "an unjustifiably narrow construction of the scope of the psychotherapist-patient privilege." Doc. #151 at 4. With respect to defendant's statements to Dr. Houghton, he

---

[1] The federal common law psychotherapist-patient privilege requires that "confidential communications between a licensed psychotherapist and [his] patients in the course of diagnosis and treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." Jaffee v. Redmond, 518 U.S. 1, 15 (1996).

-5-

argued that the "dangerous patient" exception does not exist in federal courts and in any event would not apply in this case, and that the consent form which defendant signed was not sufficient to waive the privilege. On February 1, 2006, District Judge Ortrie Smith overruled defendant's objections to Judge Larsen's recommendation, adopted Judge Larsen's recommendation and overruled defendant's motion to suppress. See Doc. #159.

After thoroughly reviewing the record, the Court agrees with, and hereby incorporates by reference, Judge Larsen's report and recommendation. See Doc. #135. The Court therefore did not err in overruling defendant's motion in limine to exclude statements defendant made to Gluhovsky and Dr. Houghton.

### III. Defendant's Motion To Dismiss Because 18 U.S.C. §§ 229 And 229A Are Unconstitutionally Vague And Overbroad

Defendant argues that the Court erred in overruling defendant's Motion To Dismiss Indictment Because 18 U.S.C. §§ 229 And 229A Are Unconstitutionally Vague And Overbroad (Doc. #83). On October 11, 2005, Magistrate Judge Larsen recommended that the Court overrule defendant's motion. See Report And Recommendation To Deny Defendant's Motion To Dismiss Indictment (Doc. #106). Judge Larsen concluded that the statute is not unconstitutionally overbroad because Sections 229 and 229F sufficiently narrow the category of toxic chemicals which an individual can face criminal penalties for possessing. Id. at 3. He also concluded that as applied to this case, the statute is not unconstitutionally vague because it "conveys sufficient warning regarding the activities in which an individual may or may not engage." Id. at 4.

On October 21, 2005, defendant filed Defendant's Objection To Magistrate's Report And Recommendation As To Motion To Dismiss Indictment (Doc. #107), reasserting the arguments which Judge Larsen rejected. On September 20, 2010, after reviewing Judge Larsen's decision de novo,

the undersigned judge rejected defendant's overbreadth and vagueness arguments and overruled his motion to dismiss the indictment. See Memorandum And Order (Doc. #353) at 3-9.[2] On October 13, 2010, after defendant's first trial, defendant filed Defendant's Renewed Motion To Dismiss, Or In The Alternative, Motion In Limine To Preclude Argument That Suicide Is Not Within The "Peaceful Purpose" Exception To 18 U.S.C. § 229(a)(1) (Doc. #368). Defendant essentially rehashed his old arguments, asserting that the "proof of the pudding is in the eating," i.e. the statute must be overbroad and vague because the jury could not agree on a verdict. On November 19, 2010, the undersigned judge overruled defendant's motion. See Memorandum And Order (Doc. #377). On December 1, 2010, the jury in defendant's retrial found him guilty after brief deliberation.

Now, defendant again reasserts the same overbreadth and vagueness arguments. The Court stands by the analysis and conclusions in its first two rulings on this issue and hereby incorporates them by reference. See Docs. #353, 377. The Court therefore did not err by overruling defendant's motions.

**IV.    Defendant's Motion In Limine To Preclude Argument That Suicide Is Not A "Peaceful Purpose"**

Defendant argues that the Court erred in overruling Defendant's Motion In Limine, With Incorporated Suggestions In Support, To Preclude Argument That Suicide Is Not Within The "Peaceful Purpose" Exception To 18 U.S.C. § 229(a)(1) (Doc. #336). Defendant incorporates by reference the arguments he made in his initial motion and his reply (Doc. #346), but makes no new arguments. On September 20, 2010, the Court overruled defendant's motion. See Memorandum And

---

[2] Defendant emphasizes that he timely filed objections to Judge Larsen's recommendation on October 21, 2005 and that the Court did not rule on his objection until September 20, 2010. See Doc. #392 at 2. In so doing, defense counsel appears to call into question the Court's analysis and conclusion. This delay, however, should be viewed in light of the convoluted procedural history of this case.

Order (Doc. #353). On November 19, 2010, after the first trial, the Court overruled a substantially similar motion based on the same arguments which defendant relies on here. See Memorandum And Order (Doc. #353). The Court stands by its reasoning and conclusion set forth in its two previous orders and hereby incorporates them by reference. See Docs. #353, 377. The Court therefore did not err in overruling defendant's motion in limine to preclude argument that suicide is not a "peaceful purpose" under 18 U.S.C. § 229(a)(1).

**V.     Indictment Charges An Offense**

Defendant argues that the indictment in this case does not charge an offense. The indictment stated as follows:

> That on or about February 4, 2003, in the Western District of Missouri, Hessam S. Ghane, a/k/a "Sam Ghane," defendant herein, did knowingly stockpile, retain, and possess, a chemical weapon, that is, potassium cyanide, which is a toxic chemical <u>not intended by the defendant to be used for a peaceful purpose as that term is defined in Title 18, United States Code, Section 229F(7)(A)</u>.
>
> All in violation of Title 18, United States Code, Sections 229(a)(1) and 229A(a)(1).

Indictment (Doc. #1) (emphasis added). The statute under which defendant was convicted provides in relevant part as follows:

> (a) UNLAWFUL CONDUCT.—Except as provided in subsection (b), it shall be unlawful for any person knowingly—
>
> (1) to develop, produce, otherwise acquire; transfer directly or indirectly, receive, stockpile, retain, own, possess, or use, or threaten to use, any chemical weapon; . . . .

18 U.S.C. § 229(a)(1). The statute defines "chemical weapon" as "[a] toxic chemical and its precursors, <u>except where intended for a purpose not prohibited under this chapter</u> as long as the type and quantity is consistent with such a purpose." 18 U.S.C. § 229F(1)(A) (emphasis added). The

-8-

statute defines "purposes not prohibited by this chapter" as follows:

> (A) PEACEFUL PURPOSES.—Any peaceful purpose related to an industrial, agricultural, research, medical, or pharmaceutical activity or other activity.
>
> (B) PROTECTIVE PURPOSES.—Any purpose directly related to protection against toxic chemicals and to protection against chemical weapons.
>
> (C) UNRELATED MILITARY PURPOSES.—Any military purpose of the United States that is not connected with the use of a chemical weapon or that is not dependent on the use of the toxic or poisonous properties of the chemical weapon to cause death or other harm.
>
> (D) LAW ENFORCEMENT PURPOSES.—Any law enforcement purpose, including any domestic riot control purpose and including imposition of capital punishment.

18 U.S.C. § 229F(7).

Defendant now argues (for the first time) that the indictment does not charge an offense because it only charged that he possessed a toxic chemical which he did not intend to use for a peaceful purpose, and did not charge that the other three "purposes not prohibited by this chapter" (i.e., protective, unrelated military and law enforcement purposes) did not apply.

An indictment is insufficient if it does not "allege an essential element of the crime charged." United States v. Redzic, 627 F.3d 683, 688 (8th Cir. 2010). An "indictment need not use the specific words of the statute, so long as 'by fair implication' it alleges an offense recognized by law." United States v. Pennington, 168 F.3d 1060, 1065 (8th Cir. 1999) (quoting United States v. Mallen, 843 F.2d 1096, 1102 (8th Cir.), cert. denied 488 U.S. 849 (1988)). In other words, "[a]n indictment is sufficient if it fairly informs the accused of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution." Mallen, 843 F.2d at 1102. Where, as here, a defendant challenges an indictment after jeopardy attaches, the Court "liberally construe[s] the indictment, finding it sufficient 'unless it is so defective that by no reasonable construction can it be said to

charge the offense for which the [defendant was] convicted.'" United States v. Olson, 262 F.3d 795, 799 (8th Cir. 2001) (quoting United States v. Just, 74 F.3d 902, 904 (8th Cir. 1996)).

Defendant cites Olson to support his argument. In Olson, the indictment charged defendant with bank robbery in violation of 18 U.S.C. § 2113(a), but it omitted an essential element of the charging statute – that defendant committed the taking by "force and violence, or by intimidation." Id. at 798-99. The Eighth Circuit held that even when construed liberally, the indictment did not sufficiently allege the crime of bank robbery. Olson, 74 F.3d 798-800. Here, the indictment contains all the elements in the charging statute. This case, therefore, is more like Redzic. In Redzic the defendant was convicted of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. 627 F.3d at 686. When Redzic challenged his conviction, the government argued that he engaged in a conspiracy with Troy Parr, a Missouri employee, that deprived Missouri of Parr's honest services in violation of Sections 1341 and 1343. See id at 687-88. The mail and wire fraud statutes, however, say nothing of "honest services." See id; 18 U.S.C. §§ 1341, 1343. Rather, Section 1346 adds the honest services provision by defining the prohibition in Sections 1341 and 1343 as including "a scheme or artifice to deprive another of the intangible right of honest services." See 18 U.S.C. § 1346. The indictment did not mention honest services or Section 1346, but the Eighth Circuit nevertheless upheld it. See Redzic, 627 F.3d at 687-91 In so doing it noted that the factual allegations of the indictment and its citation to the mail and wire fraud charging statutes made the indictment sufficient. It further emphasized that Section 1346 merely defined a term in Sections 1341 and 1343 and did not create a separate substantive offense. See id.

The same is true of the indictment here: it cited, and recited all elements contained in, the charging statute – 18 U.S.C. § 229(a)(1). It thereby put defendant on notice of the crime charged,

possession of cyanide not intended for a peaceful purpose. See Doc. #1. The indictment did not cite the entire definition of a "chemical weapon" contained in Section 229F(7), but under Redzic it did not have to. See Redzic, 627 F.3d at 687-91. The indictment, liberally but reasonably construed, can therefore be said to charge the offense for which the defendant was convicted.

**VI.    Constructive Amendment Of Indictment**

Finally, defendant asserts that the Court erred in giving Instruction No. 13 because it allowed the jury to convict him for acts not charged in the indictment, namely that defendant possessed a type and amount of potassium cyanide which was not consistent with his alleged peaceful purpose. The indictment is reproduced above; Instruction No. 13 stated as follows:

> To sustain its burden of proof, the government must prove beyond a reasonable doubt the following elements:
>
> > **ONE:**    On or about February 4, 2003, defendant knowingly possessed a toxic chemical, potassium cyanide; and
> >
> > **TWO:**
> >
> > > **A.**    Defendant intended the potassium cyanide for other than a peaceful purpose, or
> > >
> > > **B.**    Even though defendant intended the potassium cyanide for a peaceful purpose, he possessed a type and amount of potassium cyanide which was not consistent with his peaceful purpose.
>
> The term "toxic chemical" means any chemical which can cause death, temporary incapacitation or permanent harm to humans or animals.
>
> In order to return a verdict of guilty, each of you must agree that the government has satisfied its burden of proof on element Two (A), or in the alternative, each of you must agree that the government has met its burden of proof as to element Two (B).

Instructions To The Jury (Doc. #389) at 14.

-11-

Constructive amendment of an indictment occurs "when the essential elements of the offense as charged in the indictment are altered in such a manner – often through the evidence presented at trial or the jury instructions – that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." United States v. Robertson, 606 F.3d 943, 955 (8th Cir. 2010) (quoting United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007), cert. denied 552 U.S. 1209 (2008)) (internal quotation marks omitted). Constructive amendment of an indictment is per se prejudicial. United States v. Yeo, 739 F.2d 385, 387 (8th Cir. 1984). "Jury instructions are usually found to have caused a constructive amendment only if they 'in effect allowed the jury to convict the defendant of an offense different from or in addition to the offenses alleged in the indictment.'" United States v. Emery, 186 F.3d 921, 927 (8th Cir. 1999), cert. denied 528 U.S. 1130 (2000) (quoting United States v. Begnaud, 783 F.2d 144, 147 (8th Cir. 1986)). When determining whether jury instructions constructively amend an indictment, the Court must look at the instructions as a whole. Robertson, 606 F.3d at 955-56.

Here, the indictment charged defendant with knowingly stockpiling, retaining and possessing a "<u>chemical weapon</u>, that is, potassium cyanide, which is a toxic chemical" in violation of 18 U.S.C. §§ 229(a)(1) and 229A(a)(1). Doc. #1. Section 229F(1)(A) defines a chemical weapon as "[a] toxic chemical and its precursors, except where intended for a purpose not prohibited under this chapter <u>as long as the type and quantity is consistent with such a purpose</u>." Id. § 229F(1)(A) (emphasis added). Instruction No. 13 did not allow the jury to convict defendant of a crime not charged in the indictment; rather, it clearly defined the crime charged in the indictment, based on the statutory definition of terms used in the indictment. Instruction No. 13 therefore did not

constructively amend the indictment. See Redzic, 627 F.3d at 687-91.[3]

For the foregoing reasons, the Court overrules defendant's motion.[4]

**IT IS THEREFORE ORDERED** that defendant's Motion For Judgment Of Acquittal, Arrest Of Judgment, Or, In The Alternative, New Trial (Doc. #392) filed December 9, 2010 be and hereby is **OVERRULED**.

Dated this 7th day of February, 2011 at Kansas City, Kansas

                      s/ Kathryn H. Vratil
                      KATHRYN H. VRATIL
                      United States District Judge

---

[3] Defendant and the government dispute whether defendant properly preserved this argument by raising a timely objection at trial. Whether defendant properly objected at trial is irrelevant because the objection is without merit.

[4] Although defendant asks the Court for a judgment of acquittal under Rule 29, Fed. R. Crim. P., he does not allege that the evidence presented at trial was insufficient to sustain the jury verdict. Defendant's insufficiency of evidence claim appears to assume that he will prevail on his various challenges to evidence admitted at trial. Because the Court rejects defendant's evidentiary challenges, it need not consider whether the evidence admitted at trial was sufficient, although it clearly was.